Let's begin with argument in Staten v. Patrolmen's Benevolent. Good morning, Mr. Staten. Good morning, Your Honor. I would first like to start by saying good morning to all of Your Honor's present here today and everyone else in attendance. My name's Claude Anthony Staten and I'm the plaintiff in this action or the appellant in this action and currently representing myself pro se. I'm also a member of the New York City Police Department in the rank of patrolman for the last 32 years beginning my career in July 15th, 1986. Despite having passed four promotional exams for the rank of sergeant and never being promoted, although I've never done anything that would warrant such. Never been arrested, modified, nor suspended. So it's no legitimate reason for my career advancement being halted. Despite that, in 2011 I was allowed to take the lieutenant's exam. But subsequently I was refused that right in 2015 and also 2017, further stopping my career advancement. My case is against the New York City Patrolman's Benevolent Association, where I'm a long time member, as I mentioned. For the last 32 years, I've been a member without fail and non-stop, continuously. This case is a result of breach of contract on the part of the defendant or the appellee under the New York City Patrolman's Benevolent Association for which the plaintiff or the appellant, which is I, have been a member for the last 32 years. Entering in contract in the beginning of my recruitment stage in that my union membership forms were completed. Upon completion of the forms, I, the appellant, was accepted into the union and had made payments and dues deducted from my salary each and every pay period. Throughout my entire membership, which has never been breached. My choice for the membership into the union was for service to be provided. And the agreement- Yes. One of the central questions in this case, at least for me, is whether the agreement with the PBA requires it or obligates it to represent you in connection with affirmative discrimination suits. Yes, well, what brings us to these three points to address regarding the plaintiff. I was a member of the union at a time of the request of the service, meaning I was a member. The service to be provided by the union is to be reasonable and fair. I wasn't provided with any reasonable representation for my employment discrimination claims. And also, I wasn't provided any fair representation in regards to my employment discrimination claims. Is it fair that as a long time member, I should have to pay out of pocket to other entities to receive representation for a service which I'm paying the union to represent me for? No. And is it fair that the union should deny me a right to do such? I've filed six EEOC complaints in regards to my employment discriminations. I'm sorry, what was that number again, how many? Six, six in total. And the sixth complaint, the EEOC, actually took my case. And the questions that was asked by everybody I tried to get to represent me, aren't you a member of the union? The union's duty is to represent you. And the same being true in regard to the EEOC. And this is the claims and the gripes that I have. The three points that I've mentioned have been breached. To breach the contract in part or in whole is still a breach of contract. And I have not received fair, reasonable representation from the union, despite repeated claims and requests for such. So, Mr. Staten, what I understood Judge Loya's question to be focused on, and maybe you can see, or at least the linchpin, perhaps, of how we will be affected in deciding our cases. Whether there is a contractual provision with the union, where under the contract, the union is required to represent you in bringing the affirmative actions that the EEOC has said you're entitled to. Well, they are responsible to provide reasonable and fair representation, which they failed to do. But not only that, some of the claims, department charges that I received was direct result of union activity. Whereas union delegate, a union delegate, James Lisa, 2008, broke into my department locker, which is a felony, stealing department traffic summonses, which is a misdemeanor. As a result, I received department charges for his actions. He admitted to internal affairs division that he broke into my locker. After this incident, it was instructed, actually all members of the command were instructed by that delegate and other delegates of the command that they were not to be seen speaking to me. And if they were seen speaking to me, they would be ejected from the union. And I was referred to as a rat, creating a hostile work environment, which was one of my employment discrimination claims. The union is directly responsible for creating such employment discrimination against me. Which this was used as a precipice to help stop my career advancement. Understood. You have reserved two minutes for rebuttal. I did, sir. So we'll let you sit down now, and then we'll hear from the union, and then you'll have a chance to speak with us again. Thank you very much. May it please the court, John Howley for Appali Patrolman's Benevolent Association. Mr. Stanton, Officer Stanton has been asked repeatedly in the district court and now today to identify a contract provision that requires the union to provide counsel at the union's expense to prosecute an individual employment discrimination claim. He hasn't identified one in his complaint. He didn't identify one in his district court, and he cannot identify one today for the simple reason that none exist. And he hasn't identified anyone who was provided counsel by the union to pursue an individual discrimination claim. So absent a contractual provision that requires the union to provide counsel at the union's expense for individual employment discrimination claims, there can be no breach of contract. Is there any, just, I'm curious, and I don't think it's in the record in this case, but is there any mechanism within the union for helping to address the problems that Officer Stanton has identified? Well, Officer Stanton did attach to his complaint, and it is in our supplemental appendix, a news article from a PBA bulletin that says if you're having problems, you can contact the union, and the union will put you in touch with a lawyer. But then the relationship between you and the lawyer is between you and the lawyer. And so, if Officer Stanton had come to us and said he had this complaint and he needed a lawyer, he would have been referred to a lawyer. But that does not mean that the union's legal fund would pay for the lawyer. Those are two separate things. And Officer Stanton raises an incident that happened in 2008, allegedly. He didn't file this lawsuit until 2016. So under any measure, under any possible claim, that claim is time barred. And unless the court has further questions, we will rest on our briefs. Thank you, Mr. Howell. Mr. Stanton, Officer Stanton. In regard to what the council is stating, the continuous violation doctrine applies, and I do invoke it in regard to this. because in regard to this incident that happened in 2008, I still suffer the ramifications to this day. Whereas people who were employed, even those who were not employed by the NYPD, refuse to speak to me because I've been labeled as a rat. And in fear of them being ejected from the union, should they be seen consorting with me, this still creates a hostile work environment as a direct result of this action. The union rather hire this gentleman here as counsel in order to defend them against I, a union member, instead of providing the service that I, a union member, are in fact entitled to. And what he says is dissembling behavior further proof that discrimination exists. I've gone to the union countless numbers of times. They never directed me to any council, whether I had to pay out of pocket or not. The council I paid out of pocket for, who misrepresented me, I had to find on my own. Most council wanted nothing to do with me. They said I have a union. If I'm a union member, I'm entitled to service, which I have not received. Further, I would like to say that the case was dismissed in district court without first going to discovery. The discovery would have allowed a lot of information that would have provided further proof of my case. And further stating what the council is alluding to, which is not the truth. All ingredients were provided to present the prima facie case. The union's treatment towards me is arbitrary and capricious, whereas Kenneth Boss, he was represented criminally by the union for the killing of an unarmed man. Not only did they represent him criminally, which is understood, that's their duty of the union to do. But they represented him in regard to promotion as well, okay? Are you aware, Mr. Stanton? Yes. Of a case where the union represented an officer. Yes. Like you, in connection with an affirmative litigation. Not a litigation against the officer, but where the officer is suing a third party. Well, this- Yes or no, you're aware? Yes, yes. Yes. And did you make that clear in the complaint? I did. Where is that in the complaint? It's under Kenneth Boss in the complaint itself. We'll take a look at that. Okay. Anything else, Mr., excuse me. Yeah, if, yeah. Your time has run out, so just sort of if you have a summary. Yeah, I'm going to summarize it real quickly. Therefore, I respectfully ask this court to reverse the judgment of the district court in the findings and the fact in the favor of Ida Pellant. In alternative, the court should remand the case for a fair and impartial trial before a prejudiced jury and proper evidence and under current instruction as just and proper. Thank you very much. Thank you. Thank you both. We'll reserve decision in this case and get you a decision in due course.